**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **Criminal No. 22-CR-529** |
| | § | |
| **SALIH ALI MOHAMMED ALHEMOUD** | § | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT'S MOTION TO SUPRESS EVIDENCE

The United States of America, through Nicholas J. Ganjei, United States Attorney, and Sharad S. Khandelwal and Christine J. Lu, Assistant United States Attorneys, respectfully files this Opposition to the Defendant's Motion to Suppress (Docket #45). The United States respectfully requests that the Court deny the motion without a *Franks* hearing.

## BACKGROUND

At trial, the United States will show that the Defendant committed a series of robberies in the last days of the summer of 2022. In these robberies, the Defendant targeted transgender persons, physically assaulting them while yelling various slurs at them as to their sexual orientation and gender identity.

### I.    Robbery of Victim #1 on August 29, 2022

On August 29, 2022, the Defendant contacted Victim #1[1] via Grindr, a social networking application aimed at members of the LGBTQ community. The two exchanged

---

[1] Victims #1 and #2 are biological males, but identify as female.

photographs during these conversations, at which point Victim #1 gave the Defendant a phone number. During conversations via texting and Facetime, the two agreed that the Defendant would come over to Victim #1's apartment.

The Defendant arrived at Victim #1's apartment, located in Houston, Texas, at approximately 1:30pm. When he arrived, Victim #1 saw the Defendant through the window, opened the door, and let him in. The two spoke together for a brief time in the living room, and then they went into the Victim #1's bedroom at the Defendant's request. When he went inside, the Defendant closed the door behind him, making Victim #1 uneasy. The Defendant then pulled out his gun, pointed it at Victim #1, and demanded cash and possessions. After Victim #1 told him that there wasn't any in the house, the Defendant pistol whipped Victim #1, striking Victim #1 in the forehead and the back of the head. The Defendant also stomped Victim #1 with his feet, striking Victim #1's arm and chest. Victim #1 tried to get help by banging on the window, damaging the blinds as a result, but to no avail.

During this attack, the Defendant made a number of threats and slurs against Victim #1, many of which concerned Victim #1's gender identity and sexual orientation. The Defendant said words to the effect of:

- Give me all the money you have
- I am going to kill you because you are trans
- You are a demon like the rest of them
- You will not make it out alive
- Fucking tranny
- You're a demon like the others, all you trans people
- You're not a woman; you're a faggot
- My religion considers you a demon

- Your breasts are fake
- You're not going to leave here alive

Scared that the Defendant would kill Victim #1, Victim #1 told the Defendant that there was property in the living room. The Defendant went to the living room and stole two telephones, a Kate Spade handbag, and a Kate Spade wallet. In the wallet was Victim #1's Mexican visa card, as well as a Wells Fargo debit card. As the Defendant went to take the purse, Victim #1 ran out of the apartment screaming for help. The Defendant then fled the apartment. As he was leaving, he briefly got lost in the apartment complex, but eventually was seen getting into a red Dodge Charger with black rims and no license plate.

After law enforcement arrived, Victim #1 used an iPad that was not stolen and was able to ping Victim #1's stolen iPhone to 9333 Westheimer Road. Law enforcement thereafter located a red Dodge Charger with black racing stripes in that general area. Officers used the car's vehicle Identification Number ("VIN") to identify the Defendant as the owner of the Dodge Charger.

After the robbery, Victim #1 was conversing with an acquaintance from the transgender community on social media. When Victim #1 described the assault and the assailant, this acquaintance told Victim #1 about a similar incident that had happened to two other transgender individuals about a month earlier, on July 31 and sent an Instagram profile picture of the assailant in that attack to Victim #1. This photograph was of the Defendant. Victim #1 recognized the person in the photo as the same person who committed the robbery and assault against Victim #1.

Officers subsequently placed the Defendant's photo in a double blind photo array, and on September 1, 2022, Victim #1 identified the Defendant.

## II.    Robbery of Victim #2 on September 1, 2022

Three days after robbing Victim #1, on September 1, 2022, the Defendant robbed Victim #2 in a similar way. Victim #2 met the Defendant on Grindr on August 31, 2022. During their conversations, they agreed to meet the next day at the apartment where Victim #2 was staying, which is located in Houston. Texas.  On September 1, 2022, at approximately 10:30 am, the Defendant arrived and entered the living room of the apartment. The Defendant was unaware that there were two other persons inside the apartment, with one of them being in one of the bedrooms.  Soon after his arrival, the Defendant and Victim #2 entered the other bedroom.  When Victim #2 turned away from the Defendant to play some music, the Defendant pulled out a handgun, pointed it at Victim #2 and demanded money and bags.  The Defendant looked through drawers and eventually grabbed Victim #2 by the hair, pulling Victim #2 across the floor of the room.  Victim #2 could not leave because the Defendant was blocking the door.

The Defendant was yelling at Victim #2 throughout this encounter, but Victim #2 does not speak English very well and therefore did not understand much of what the Defendant said.  However, Victim #2 heard the Defendant say "gay guy" or words to that effect while pulling Victim #2 across the floor by the hair.  Victim #2 also understood the Defendant told Victim #2 that he was going to kill Victim #2.

During this robbery and assault, Victim #2 was yelling for help. In response, the Defendant left the bedroom and encountered Witnesses #1 and #2. Witness #1 was a resident of the apartment, and reported hearing yelling and the word "faggot" being said. Witnesses #1 and #2 were in the common area of the apartment when they saw the Defendant exit a bedroom and point his gun at them. The Defendant stated to them, "you want to die you fucking faggot," or words to that effect. Witness #1 ran back into the bedroom and began to speak loudly as if calling the police. Witness #2 ran into the kitchen and hid. Meanwhile, the Defendant fled the apartment, taking with him a Gucci purse and at least one cellular telephone. Victim #2, Witness #1, and Witness #2 saw the Defendant flee in a red Dodge Charger with black racing stripes.

Immediately after this crime, they went onto social media and learned that a friend in the transgender community (Victim #1) had been robbed and assaulted a few days earlier. Victim #2 got into contact with Victim #1, exchanged a photograph, and Victim #2 identified the person in the photograph was also Victim #2's assailant. This photograph was of the Defendant. After realizing that the Defendant had been doing this repeatedly to members of the transgender community, at approximately 2:30pm that same day, Victim #2, Witness #1 and Witness #2 walked into a police station to report the crime. Later, on September 6, 2022, the three all positively identified the Defendant when shown a double-blind photo array.

## III.    Arrest of Defendant on State Charges

A few hours after the second robbery, at 4:47 pm on September 1, 2022, the Defendant was arrested after fleeing from law enforcement in a high speed chase. At

around that time, law enforcement received a report that a suspicious vehicle was being driven by a suspect pointing a gun at occupants of at least one other vehicle in midtown Houston, Texas. (This concerned a separate event not directly having to do with Victim #1 and #2). A vehicle description was given, and law enforcement officers on patrol spotted a vehicle matching that description. When law enforcement attempted to conduct a traffic stop on the vehicle, however, the suspect driving the vehicle fled and a high speed chase ensued. Eventually, the suspect vehicle collided with another vehicle, allowing law enforcement to arrest the driver.

The driver was the Defendant, and the car involved was a red Dodge Charger with two black racing stripes, which matched the descriptions of the vehicle used to flee after the robberies of Victims #1 and #2. Additionally, a search of the Defendant's red Dodge Charger on the scene revealed a black Glock 17. During his arrest, the Defendant further stated that (a) the firearm belonged to him, and (b) that he had a Hellcat[2] and was "not about to stop for some pigs."

The Defendant was arrested and charged in state court with offenses connected to his evasion from police, and eventually released on bond. On September 8, 2022, the Defendant was re-arrested on state charges concerning one of the two robberies discussed above. The Defendant was later indicted by a state grand jury on several charges, some of which concerned the robberies of Victims #1 and #2.

---

[2] The particular model of the Dodge Charger being driven by the Defendant is known as a "Hellcat."

## IV.    Subsequent Federal Grand Jury Investigation

The United States' investigation into potential federal hate crimes and related charges began immediately after the two robberies occurred.  On September 15, 2022, the United States applied for search warrants of the Defendant's vehicle and apartment.  In support of those applications, FBI Task Force Officer (TFO) David Helms submitted sworn eight page affidavits detailing the federal hate crime investigation as to the Defendant's vehicle and apartment.  That same day, Magistrate Court Judge Andrew M. Edison issued those search warrants.  *See* Exhibit A (Search Warrant of Defendant's Vehicle); Exhibit B (Search of Defendant's Apartment).

A search of the Defendant's car pursuant to the search warrant produced nothing additionally incriminating.  (It bears repeating that the Defendant's vehicle had already been searched on the day of his arrest and his Glock-19 was recovered at that time).  A search of the Defendant's apartment produced, *inter alia*, the Defendant's cell phone.

On September 21, 2022, the United States applied for a search warrant as to the data contained on the Defendant's cell phone.  TFO Helms submitted an 8 page affidavit in support of that search warrant.  That same day, Magistrate Court Judge Christina M. Bryan issued that search warrant.  *See* Exhibit C (Search Warrant of Data on Defendant's Phone).  A search of the Defendant's cell phone was subsequently attempted, but law enforcement has been unable to bypass the security on that device.  As such, nothing usable has been found on the Defendant's phone.

Additionally, on that same day, the United States submitted a search warrant to Metro PCS, the Defendant's cell phone service provider, as to data it kept in its custody –

most notably, cell tower locations related to the cell phone's use at the time of the two robberies under investigation. TFO Helms submitted a nine page affidavit in support of this application. On September 21, 2022, Magistrate Judge Bryan issued this search warrant. *See* Exhibit D (Search Warrant to Metro PCS as to Cell Tower Locations). A subsequent examination of the data provided by the cell phone provider found that the phone's location was consistent with the robberies.

Law enforcement also obtained additional federal search warrants as to certain social media accounts, but these are not relevant to the Defendant's motion to suppress.

## V.    Federal Criminal Complaint

On October 4, 2022, Magistrate Court Judge Yvonne Ho signed a Criminal Complaint for the Defendant on charges of Kidnapping in violation of 18 U.S.C. § 1201. *See* Docket #1. In support of that Complaint, TFO Helms submitted a four page, single spaced affidavit concerning the August 29, 2022 robbery. In addition to the federal kidnapping charge for that robbery, the affidavit discussed in detail a total of four separate criminal events under investigation, three of which were under investigation for a federal hate crime. *See id*. at 2.

At that time, the Defendant was in custody on state charges related to these crimes. Accordingly, on October 7, 2022, the Court issued a writ to bring the Defendant to federal court from state custody. *See* Docket (writ was issued without a docket number on October 7, 2022). On October 24, 2022, Magistrate Judge Sam S. Sheldon issued an order detaining the Defendant in federal custody pending trial. *See* Docket # 9.

## VI.    Indictment by a Federal Grand Jury

On October 14, 2022, the United States Attorney General certified that the undersigned prosecutors could bring a federal hate crime charge against the Defendant. *See* 18 U.S.C. § 249(b) (providing that no prosecution for any offense contained in 18 U.S.C. § 249 may be undertaken by the United States without certification in writing by the Attorney General).

On October 26, 2022, a federal grand jury returned an indictment charging Defendant Salih Ali Mohammed Alhemoud with crimes related to his bias-motivated assault, kidnapping, and robbery of a Victim #1, a transgender woman.  Later, after the Attorney General certified an additional hate crime charge against the Defendant as to Victim #2, a federal grand jury on October 23, 2024, returned a superseding indictment adding charges related to the bias-motivated assault, kidnapping, and robbery of a Victim #2, a transgender woman.

Today, the Defendant sits before the Court charged with six offenses.  Counts One and Four charge the Defendant with violating 18 U.S.C. § 249 for willfully causing bodily injury to Victims #1 and #2 while armed with a firearm and during an act that included kidnapping, because of his victims' actual and perceived sexual orientation and gender identity. Counts Two and Five charge the Defendant with violating 18 U.S.C. § 1201(a)(1) with Kidnapping for these same acts.  Counts Three and Six charge the Defendant with violating 18 U.S.C. § 924(c) for brandishing a firearm during and in relation to these crimes of violence.

## DISCUSSION

As noted above, the Court issued a number of search warrants during the federal hate crime investigation into the Defendant. In his motion to suppress, the Defendant alleges deficiencies in three of those search warrants. First, he discusses the September 15, 2022 search warrant application pertaining to his "red Dodge Charger SRT-8." Def. Mot. at 2. Second, he discusses the September 15, 2022 search warrant application of "Mr. Alhemoud's home located at 9233 Westheimer Road, Apt. 128[.]" *Id.* Third, the Defendant discusses the September 21, 2022 search warrant pertaining to the "contents of a cell phone believed to belong to Defendant which was seized during the search of his home." *Id.* The Defendant asks this Court to suppress "any and all statements and evidence obtained from the unconstitutional searches of his home, car and electronic devices." *Id.* at 1.

This motion should be denied without an evidentiary hearing for several reasons. First, there was no evidence generated as a result of the three search warrants that the government intends to admit at trial at this time, and so there is nothing to suppress. Second, the factual allegations in the search warrant affidavits support the magistrate judges' decision that there was probable cause. Third, even assuming for the sake of argument there was evidence to suppress and that the affidavits lacked probable cause, the good faith exception to the exclusionary rule warrants a denial of the Defendant's motion to suppress. Finally, the Defendant has not, and cannot, meet his burden of showing the affidavits contained an intentional misrepresentation or deliberately omitted a material fact

that is required by the Supreme Court to hold a *Franks* hearing on the Defendant's motion. In sum, the Defendant's motion should be denied without an evidentiary hearing.

## I.   THERE IS NO EVIDENCE TO SUPRESS

The Defendant's motion to suppress should be denied because none of the three search warrants he complains about produced any evidence the government intends to use at trial at this time.

First, nothing was seized in conjunction with the search warrant authorized search of the Defendant's car.  *See* Exhibit E (Search Warrant Return of Defendant's Vehicle), While officers did recover a firearm from his car immediately after his evasion from police on September 1, 2022, that search was not conducted pursuant to a search warrant and is not challenged in the Defendant's motion.

Second, the United States has not yet obtained any usable data as a result of the search warrant of the contents of the Defendant's cell phone.  The FBI has not yet been able to bypass the six digit passcode protection securing the Defendant's iPhone, and the resulting partial file extraction has failed to produce any usable evidence in this case.  *See* Exhibit F (Report as to Search of Defendant's Phone) at 3.

Third, at this time the United States does not intend to admit anything seized as a result of the search warrant that authorized search of the Defendant's apartment.  To be sure, the FBI did seize several items from that apartment. *See* Exhibit G (Search Warrant Return of Defendant's Apartment).  At this time, however, the United States does not anticipate admitting any of those items as exhibits at trial.  Of course, one of the things that was seized from the apartment was the Defendant's cell phone.  However, as FBI has been

unable to actually search the data contained in the phone itself, as discussed above, the United States does not intend to admit the phone itself or the data contained therein as trial exhibits at this time.

To be clear, the United States does intend to admit data ***about*** the Defendant's phone use on the dates of the robberies – specifically cell tower data showing the use of the Defendant's phone on these dates.   That data, however, was not obtained as a result of a search of the data contained on the Defendant's phone, and the phone itself is not needed as an exhibit at trial.  Rather, that data was stored by the Defendant's telephone service provider and obtained as a result of a fourth search warrant which the Defendant does not mention in his motion.  On September 21, 2022, Magistrate Judge Bryan issued a search warrant "for information associated with a certain cellular telephone number (419) 984-2697 … that is stored at premises controlled by Metro PCS, now Metro by T-Mobile, a wireless telephone service provider headquartered at 2250 Lakeside Blvd., Richardson, TX 75082." *See* Exhibit D at 2.  The Defendant does not discuss, much less complain about, this separate search warrant.

In sum, the Defendant's motion should be denied because, at this time, the United States does not intend to admit any of the evidence at trial that Defendant seeks to suppress.

## II.    THE AFFIDAVITS SUPPORT THE FINDING OF PROBABLE CAUSE

Even if the United States were to seek to admit any of the results of the search warrant, the Defendant's motion should be denied because his claim that the search warrant affidavits lacked probable cause is wholly without merit.  *See* Def. Mot. at 11.  The Defendant argues that the search warrants do not contain evidence of the Defendant's bias

motivation.  Specifically, the Defendant claims that the affidavit does not show "how the crime was committed in order to injure a victim based on their perceived status rather than a crime totally motivated by money or escape." *Id*.  According to the Defendant, the affidavit only establishes "a crime of convenience rather than [a crime] motivated to injure a person due to their personal status." *Id*.  In other words, the Defendant argues that the affidavit does not contain evidence that he had a hate crime motive when committing these crimes.  The Defendant's motive to assault and rob his victims because of their gender identity and sexual orientation, however, is laid out plainly in the search warrant affidavit.

"Probable cause does not require proof beyond a reasonable doubt, but only a showing of the probability of criminal activity." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (quoting *United States v. Daniel*, 982 F.2d 146, 151 (5th Cir. 1993)). In order for a court to issue a search warrant, the affidavit must contain evidence that would lead the court to conclude that there was a "fair probability" that a crime had occurred. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 2332.  As further guidance, the Fifth Circuit has provided that probable cause "does not require proof beyond a reasonable doubt; a magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing." *United States v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (citing *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir.1991)).

Here, the courts could and did conclude that the factual allegations in the affidavits submitted by TFO Helms led them to conclude that there was a "fair probability" that a federal crime had occurred.  In these affidavits, TFO Helms alleges that after pistol whipping Victim #1 and while stomping Victim #1's face and chest, the Defendant "used various transgender slurs" including words to the effect that:

- Victim #1 was a demon like the others, all you trans people
- You're not a woman, you're a faggot
- My religion considers you a demon
- Your breasts are fake, and
- You're not going to leave here alive.

*See* Exhibit B at 5.  Additionally, TFO Helms alleges that with respect to Victim #2, the Defendant was "specifically soliciting 'trans' dates."  Like with respect to Victim #1, TFO Helms observed that the Defendant yanked Victim #2 by the hair, pushed Victim #2, and threatened to kill Victim 2 – all while calling Victim #2 a "gay guy" or words to that effect. *See id*. at 6.  TFO Helms also noted that when escaping from that apartment, the Defendant pointed a gun at another occupant of the apartment and yelled, "You want to die, you fucking faggot" or words to that effect. *See id*. at 7.

These allegations are more than sufficient for a magistrate court judge to find probable cause that the Defendant selected Victim #1 and Victim #2 as his targets because of their gender identity and sexual orientation.  They are also more than sufficient to find that there was probable cause to believe that the Defendant's particularly and unnecessarily vicious assaults of Victims #1 and #2, both of whom were entirely defenseless, were motivated by their gender identity and sexual orientation.  *See, e.g., United States v. Metcalf*, 881 F.3d 641, 645 (8th Cir. 2018) (finding sufficient evidence to sustain a race-

based hate crime conviction under 18 U.S.C. § 249 under the higher reasonable doubt standard) ("In light of [the Defendant's] repeated racially based comments, coupled with the surveillance cameras' depiction of the viciousness of his racially based initial attack upon the defenseless Sandridge, followed by his return to the bar to administer an equally vicious renewed attack, we need say no more than that that the evidence was clearly sufficient to support the conviction.").

## III.    THE GOOD FAITH EXCEPTION, IF NECESSARY, DEFEATS THE MOTION TO SUPPRESS

As detailed fully above, there was sufficient probable cause to support the issuance of the search warrants about which the Defendant complains.  Even if this Court were to conclude otherwise, however, the evidence seized should not be suppressed because the seizing officers acted in good faith.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court considered "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900. After considering that issue, the Court ultimately ruled that, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. at 926.  Evidence "obtained by officers in objectively reasonable good-faith reliance on a search warrant is admissible even though the affidavit on which the warrant was based was insufficient to establish probable cause."

*Id*. at 923-24.

Furthermore, "an officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a bare bones affidavit." *United States v. Cherna*, 184 F.3d 403, 409 (5th Cir. 1999). "Bare bones affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Fields*, 72 F.3d 1200, 1214 (5th Cir. 1996). But "[a]n affidavit need not present a watertight criminal case to support good-faith reliance on a warrant." *Cherna*, 184 F.3d at 410- 11.

If law enforcement officers obtain a search warrant before conducting a search, the issuance of the warrant normally satisfies the good-faith requirement. *See Leon*, 468 U.S. at 922. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Gates*, 462 U.S. at 267 (White, J., concurring in judgment) ("[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in  conducting the search."); *Leon* 468 U.S. at 922 (citing *United States v. Ross*, 456 U.S. 798, n.32 (1982)). "Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *Leon*, 468 U.S. at 921-25).

An officer's decision to obtain a warrant is *prima facie* evidence that he or she was acting in good faith. *See Leon*, 468 U.S. at 921 n.21; *Gates*, 462 U.S. at 263 (White, J., concurring).  In this case, TFO Helms submitted lengthy, detailed affidavits when seeking

these search warrants, and obtained search warrants for the Defendant's apartment, car, and phone believed to contain evidence of a federal hate crime.  The affidavits made a comprehensive showing of probable cause to issue the search warrant, and as such the issuing magistrate judges did not abandon their judicial role.  The seizing officers' reliance on the magistrate court judges' authority to issue these warrants was objectively reasonable.

## IV.    NO EVIDENTIARY HEARING IS NECESSARY BEFORE DENYING THE DEFENDANT'S MOTION

Additionally, the Court does not need to conduct an evidentiary hearing before denying the Defendant's motion to suppress.  In his motion, the Defendant claims the good faith exception does not apply and that an evidentiary hearing is necessary because TFO Helms intentionally made a material false statement and a material omission in these affidavits.  These claims are patently false.  Indeed, the Defendant's claims in his motion to suppress are nothing more than conclusory statements.  In his motion, the Defendant fails to offer any evidence or even explanation of these claims.  Under well-established Supreme Court precedent, these sort of conclusory statements without an offer of proof do not warrant a full blown evidentiary hearing.  *See Franks v. Delaware,* 438 U.S. 154, 171 (1978).

In *Franks,* the U.S. Supreme Court held that an affidavit in support of a search warrant enjoys a presumption of validity.  *See id. at* 171. To defeat this presumption and to "mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id*.  Instead, in his

motion the Defendant must make a "substantial preliminary showing," to support his "allegations of deliberate falsehood or reckless disregard for the truth." *Id*. at 155, 171. "Those allegations ***must*** be accompanied by an offer of proof." *Id*. at 171 (emphasis added). That offer of proof must be rigorous:

> They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id*. Furthermore, the Defendant must also show that if the alleged false statement is set aside, there was insufficient evidence to support the magistrate court's probable cause finding. If instead "there remains sufficient content in the warrant affidavit to support a finding of probable cause, ***no hearing is required***." *Id*. at 172 (emphasis added).

In applying *Franks*, the Fifth Circuit has designed a three part test to use when confronted with a Defendant's request for an evidentiary hearing during a challenge to a search warrant. "First, does the affidavit contain a false statement? Second, was the false statement made intentionally or with reckless disregard for the truth? And third, if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause?" *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (internal citations omitted). The Defendant bears the burden of proving this by a preponderance of the evidence. *See United States v. Hinojosa*, 349 F.3d 200, 203 (5th Cir. 2003).

This analysis applies to false statements in the affidavit as well as to material omissions of facts allegedly excluded from the search warrant affidavit. To necessitate a *Franks* hearing as to an alleged material omission, that omission "must be of information

that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *See United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000). Unless the Defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate, the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity. *United States v. Tomblin,* 46 F.3d 1369, 1377 (5th Cir. 1995).

Here, the Defendant alleges that there was both a materially false statement and a material omission in the affidavits submitted in support of the search warrants. *See* Def. Mot. at 5-11. Neither of these claims have any merit. Furthermore, as the Defendant cannot satisfy his burden of proof, the Court should decline to hold an evidentiary hearing.

## A.      Defendant's Claim of an Intentional Misrepresentation is Without Merit

First, the Defendant claims that in these affidavits TFO Helms "falsely included information of an investigation of child exploitation and/or child pornography." *See* Def. Mot. at 7. That is untrue. In the affidavits in support of the search warrant of the Defendant's apartment and of the car, there is only a single errant mention of child exploitation and pornography. It is not contained in any of the actual factual allegations concerning the specifics of the investigation into the Defendant; rather, it is contained in a generalized statement at the beginning of the affidavit concerning who the agent talked in when preparing his affidavit:

> The statements in this affidavit are based upon the investigation I have conducted and based on my conversations with other law enforcement officers involved in this investigation, or have who engaged in numerous investigations involving child exploitation and/or child pornography. Since this affidavit is being submitted for the limited purpose of securing a search

> warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of Title 18, United States Code, Section 249[.]

*See* Exhibit B at 3 (apartment search warrant); Exhibit A at 3 (car search warrant). There is no other mention of a child exploitation or pornography investigation into the Defendant in this lengthy and detailed affidavit, which discusses on the investigation of a hate crime. This language was removed from the search warrants obtained a week later, on September 21, 2022. As such, it is apparent that TFO Helms' reference to speaking to agents involving child exploitation and pornography investigations was nothing more than a typographical error, where he should have instead written "civil rights investigations."

The Defendant must show by a preponderance of the evidence that this misstatement was made intentionally. *See Ortega*, 854 F.3d at 826; *United States v. Hinojosa*, 349 F.3d at 203. Moreover, to satisfy his burden, the Defendant must make an offer of proof. *Franks,* 438 U.S. The Defendant cannot meet this burden because he offers nothing to support his conclusory statement that TFO Helms deliberately misled the magistrate court.

Furthermore, the Defendant fails to meet his burden of showing that taking out this statement would strip the search warrant of probable cause entirely. To warrant a *Franks* hearing, a deliberate false statement or omission would have to completely undermine a finding of probable cause for the entirety of the warrant. *See United States v. Froman*, 355 F.3d 882, 890-91 (5th Cir. 2004) (holding affidavit still supported probable cause despite affiant's false representation that all members of group automatically received emails containing child pornography because, even if not all members received the emails, the

"magistrate was entitled to conclude that the overriding reason someone would join this group was to permit him to receive and trade child pornography"); *see also United States v. Davis,* 226 F.3d 346, 351-352 (5th Cir. 2000) (omission absolving defendant of one act of fraud did not strip warrant of probable cause where affidavit contained evidence of different act of fraud). It is not enough to show that the omitted information, had it been included, would have "weakened" the case for probable cause—it must dispose of it entirely. *See Davis*, 226 F.3d 346 at 351.

The Defendant cannot meet this burden. This statement is not actually a false statement of fact about the defendant or about the investigation, and as such does not affect the probable cause finding in any way. As discussed in the first part of that sentence, the factual allegations about the Defendant and his criminal acts that were contained in the affidavit were all based on his and other agent's investigation into this case. That was a true statement. Given that the entire affidavit taken together discusses a hate crime, there is no reason to believe that TFO Helms' typographical error somehow misled the Court into finding probable cause for the existence of a federal hate crime.

## B.    Defendant's Claim of a Material Omission is Without Merit

The Defendant also claims that the affidavits "omitted that the case is unclear if a federal hate crime existed at that time." *See* Def. Mot. at 7. The Defendant explains that the time these affidavits were submitted, the affidavits "knew or falsely disregarded the fact that the case had not yet been determined to be a federal hate crime, but requested that the search warrants based on a federal hate crime." *See* Def. Mot. at 5.

The Defendant fails to explain what "determination" he is referring to when he says the case "had not yet been determined to be a federal hate crime" in September when the search warrants had been issued. To obtain a search warrant, of course, the magistrate court judge must find that there is probable cause that the crime alleged had occurred. That happened in this case, so presumably the Defendant is not referring to that "determination." But what other "determination" the Defendant is referring to is entirely unclear.

Surely the Defendant is not referring to the statutory requirement contained in 18 U.S.C. § 249(b) that the Attorney General must certify the case before a federal hate crime charge can be prosecuted. That provision explicitly makes clear that it only refers to the charging of a federal hate crime, not the investigation of a federal hate crime. *See* 18 U.S.C. § 249(b)(2) ("Nothing in this subsection shall be construed to limit the authority of Federal officers, or a Federal grand jury, to investigate possible violations of this section.").

In any event, there is no requirement that anyone must "determine" a hate crime occurred before the magistrate court judge makes a finding of probable cause and issues a search warrant. To require some sort of "determination" before a search warrant is issued and before the investigation can proceed simply makes no sense. After all, a search warrant is part of an investigation seeking evidence to determine if a crime occurred or not. As such, the Defendant fails to carry his burden of showing, by a preponderance of the evidence, that there was a material omission at all.

Furthermore, the Defendant's claim that this alleged omission was motivated by bad faith is equally mystifying. The Defendant argues that this omission was in bad faith because "the subsequent criminal complaint filed in this case that served to arrest Mr.

Alhemoud belies the point that Det. Helm's investigation was into a federal hate crime rather than for some other state criminal offense." *See* Def. Mot. at 6.

But the Defendant's apparent claim that TFO Helms' investigation was actually a state investigation somehow disguised as a federal investigation is nonsensical. While there were concurrent investigations by both federal and state authorities into the Defendant's criminal conduct, there is nothing unusual about that – and indeed, has resulted in similar but not entirely overlapping charges being brought against this Defendant by both federal and state authorities. As such, the Defendant's suggestion that the federal search warrant was actually in support of a state investigation makes no sense. Moreover, this statement does not help clarify what other "determination" the Defendant claims is needed to be made before a search warrant was submitted. Nor does it clarify what fact he claims was omitted from the search warrant.

Similarly, the Defendant's related claim that TFO Helms "essentially engaged in forum shopping" because he could have filed for a state court search warrant, but chose to obtain a federal search warrant, *see* Def. Mot. at 12, makes no sense. As a Houston Police Department detective and FBI Task Force Office, TFO Helms can seek a search warrant in both state court and in federal court, to be sure, but that ability does not mean that his making a choice to go to one over the other is "forum shopping." Forum shopping is where a party or agent takes actions or manipulates facts in order to ensure that they appear in front of a specific judge. Indeed, the case cited by the Defendant in his motion address involved an allegation that an agent physically moved a package into the Northern District of Ohio from a neighboring district in order to obtain a search warrant in the Northern

District.  *See United States v. Bailey*, 193 F.Supp.2d 1044, 1051 (S.D. Oh. 2002) (finding search warrant was properly obtained because the postal inspector had a legitimate reason to want the package inspected in the Northern District).  But the Defendant does not allege anything like that happened here.  Indeed, the Defendant does not provide anything other than a bare accusation in support of his claim of forum shopping.

Furthermore, TFO Helms did not "unilaterally" make the decision to seek a federal search warrant instead of a state search warrant on his own, as the Defendant claims.  *See* Def. Mot. at 12.  He was directed to seek a federal search warrant by the undersigned federal prosecutors who had already begun a federal grand jury investigation into these crimes.  There was no forum shopping or any effort to "search for judges most likely to sign an affidavit."  *See* Def. Mot. at 12. In fact, four different federal magistrate judges (J. Edison, Bryan, Ho, and Sheldon) weighed in on the federal search warrants, the federal complaint, and detention in federal custody in this case. (It is unclear why the Defendant believes that the federal court judges are more likely to sign a search warrant than state court judges.)  The warrants were sought in federal court to further a federal grand jury investigation.  Indeed, just a few weeks later, the Defendant was federally charged in a federal criminal complaint and then charged in an Indictment by a federal grand jury.

In any event, the Defendant does not even attempt to carry his burden of showing that the alleged omission – whatever it is – would have led the magistrate court to a different result.  To require a *Franks* hearing as to an alleged material omission, that omission "must be of information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *See United States v. Davis*,

226 F.3d 346, 351 (5th Cir. 2000).  The Defendant's motion contains nothing to meet this burden.  Indeed, the affidavits explicitly refer to the fact that the Defendant had already been arrested on state charges and that he was in custody.  *See* Exhibit B at 7 (apartment search warrant).

In sum, the Defendant cannot show that the United States intentionally inserted a false statement into the affidavit that misled the Court into a finding of probable cause. Nor can the Defendant even explain what has been omitted from these affidavits, much less show that its omission was intentional and that it misled the Court into a probable cause finding.  As such, the Defendant has failed to make any showing that the good-faith exception to the exclusionary rule does not apply to the present case, and his motion should be denied without a *Franks* hearing.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney

By:    */s/ Sharad S. Khandelwal*
SHARAD S. KHANDELWAL
CHRISTINE J. LU
Assistant United States Attorneys
U.S. Attorney's Office, S.D. Texas
Tel: (713) 567-9000

### Certificate of Service

I certify that, on the date this was filed with the Court, a copy of the foregoing was provided to counsel for Defendant via ECF and/or e-mail.

*/s/ Sharad S. Khandelwal*
SHARAD S. KHANDELWAL
Assistant U.S. Attorney

# EXHIBIT INDEX

| Letter | Description |
|--------|-------------|
| A | Search Warrant of Defendant's Vehicle |
| B | Search Warrant of Defendant's Apartment |
| C | Search Warrant of Data on Defendant's Phone |
| D | Search Warrant to Metro PCS as to Cell Tower locations |
| E | Search Warrant Return of Defendant's Vehicle |
| F | Report as to Search of Defendant's Phone |
| G | Search Warrant Return of Defendant's Apartment |