United States District Court
Southern District of Texas
**ENTERED**
June 06, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § § | |
| VS. § § | CIVIL ACTION NO. 4:22-CR-529 |
| SALIH ALI MOHAMMED ALHEMOUD, § § § § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant Salih Ali Mohammed Alhemoud's ("Defendant") Motion to Suppress any and all evidence obtained through two allegedly unconstitutional search warrants. (Doc. No. 45). The United States responded in opposition, (Doc. No. 47), and Defendant replied. (Doc. No. 48). On May 21, 2025, the Court held a hearing on Defendant's Motion to Suppress. Based on the Court's review of the law and argument of the parties, the Court **DENIES** Defendant's Motion to Suppress. (Doc. No. 45).

### I. BACKGROUND

Defendant is charged with several federal crimes including, most relevant here, violating 18 U.S.C. § 249(a)(2)—commonly known as the federal hate crime statute. The charges against him allege that Defendant committed several robberies in which he specifically targeted transgender individuals, physically assaulting them while yelling violent/vicious slurs referring to their sexual orientation and gender identity. These alleged assaults and robberies took place in August and September of 2022. (Doc. No. 40 at 1–4). As the particular allegations are somewhat vital to the Court's analysis of the suppression arguments, the Court will outline the factual allegations in some detail.

On August 29, 2022, Defendant is alleged to have contacted Victim #1 through Grindr—a dating app for members of the LGBTQ community—arranging to meet at Victim #1's home. (Doc. No. 47 at 1). After entering the victim's home, Defendant allegedly brandished a firearm, made numerous slurs and hateful comments on the basis of Victim #1's transgender identity, pistol-whipped and stomped the victim, and stole several items including phones, a wallet, and a purse containing the victim's immigration visa and debit cards. (*Id.* at 3). As Defendant was leaving the apartment complex, a witness allegedly saw Defendant drive away in a red Dodge Charger. (*Id.*).

Victim #1 called the police following the robbery and informed the police that the victim's phone was still in Defendant's car. (Doc. No. 47 at 3). The victim then used another device to track the stolen phone, leading the police to a car that belonged to the Defendant and matched a witness's description. (*Id.*). The police then provided Victim #1 with a double-blind photo array, from which Victim #1 identified Defendant as the assailant. (*Id.* at 4).

On September 1, 2022, Victim #2 alleges that Defendant performed a factually similar assault and robbery after connecting and agreeing to meet-up via Grindr. (*Id.* at 4). Victim #2 alleges that, once Defendant entered the bedroom, he pulled out a pistol and demanded money and bags. (*Id.*). Defendant allegedly would not allow Victim #2 to leave the room while he searched through drawers and, at one point, dragged Victim #2 around the room by the hair. (*Id.*). Further, though not a native English-speaker, Victim #2 understood Defendant to be saying slurs toward the victim—in essence, referring to Victim #2 as a "gay guy," and threatening to kill the victim. (*Id.*). During this alleged robbery, there were two other witnesses in the home who saw Defendant exit Victim #2's bedroom. (*Id.* at 5). According to Witness #1, Defendant then pointed a gun at them, asked "you want to die you f***ing fa**ot," and then fled in a red Dodge Charger. (*Id.*).

Several hours after the alleged second robbery, Defendant was arrested after a high-speed chase with state law enforcement. (*Id.* at 5–6). Law enforcement had received a report of a suspect pointing a gun at the occupants of a vehicle in midtown Houston. (*Id.* at 6). When law enforcement officers attempted to perform a traffic stop, Defendant attempted to evade the officers. The pursuit ended after Defendant struck another car. (*Id.*). Defendant was arrested on charges related to the car chase, and eventually released on bond. (*Id.*). As Defendant's red Dodge Charger Hellcat matched the vehicle involved in the alleged robberies, Defendant was arrested again several days later on the charges related to the assaults and robberies. (*Id.*).

The United States then performed an investigation into potential hate-crime charges, seeking several warrants for the search of Defendant's apartment, cell phone, and car. (*Id.* at 7). The first search warrant, ("Warrant #1) for Defendant's car, was signed by Judge Andrew Edison based on an affidavit submitted by Detective David Helms ("Det. Helms"). (*Id.*). According to the United States, this search provided no additional evidence because Defendant's pistol had been recovered in a search of the car following the above-referenced car chase. The second warrant, ("Warrant #2) for Defendant's home and cell phone, was signed by Judge Christina Bryan based on another affidavit from Det. Helms. (*Id.*). Similarly, according to the United States, this search also resulted in no usable evidence.

On October 4, 2022, Judge Yvonne Ho signed a Criminal Complaint for the Defendant on charges of Kidnapping in violation of 18 U.S.C. § 1201. (Doc. No. 1). In support of that Complaint, Det. Helms submitted an affidavit concerning the August 29, 2022 robbery. In addition to the federal kidnapping charge for that robbery, the affidavit discussed in detail a total of four separate criminal events under investigation, three of which were also under investigation for a federal hate crime violation. (*Id.* at 2).

A federal grand jury returned an indictment charging Defendant with the assault, kidnapping, and robbery of Victim #1, a transgender individual, which was certified by the United States Attorney General as a hate crime charge. Following the first indictment, the Attorney General certified an additional hate crime charge against the Defendant as to Victim #2, also a transgender individual. On October 23, 2024, a federal grand jury returned a superseding indictment adding charges related to the bias-motivated assault, kidnapping, and robbery of Victim #2. Consequently, at this stage, Defendant is charged with six offenses. Counts One and Four charge the Defendant with violating 18 U.S.C. § 249 for willfully causing bodily injury to Victims #1 and #2 while armed with a firearm and during an act that included kidnapping, because of his victims' actual and perceived sexual orientation and gender identity. Counts Two and Five charge the Defendant with violating 18 U.S.C. § 1201(a)(1) with Kidnapping for these same acts. Counts Three and Six charge the Defendant with violating 18 U.S.C. § 924(c) for brandishing a firearm during and in relation to these crimes of violence.

Defendant filed the instant motion to suppress. (Doc. No. 45). In the motion, Defendant argues that the affidavits supporting the search warrants for his car and apartment were bare bones, did not establish probable cause, and included false statements and material omissions in violation of his Fourth and Fifth Amendment rights. In response, the United States argues that the affidavits did not contain any false statements or omissions and, even if they did, they still established probable cause as a matter of law without the alleged misstatements. (Doc. No. 47).

## II.  LEGAL STANDARDS

Motions to suppress are analyzed based on the rights provided to defendants by the Fourth Amendment of the United States Constitution. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants

4

shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. Thus, under the Fourth Amendment: (1) all searches and seizures must be "reasonable"; and (2) a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set forth with particularity. *Kentucky v. King*, 563 U.S. 452, 459 (2011) (citing *Payton v. New York*, 445 U.S. 573, 584 (1980)). "Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought [by the warrant] constitute fruits, instrumentalities, or evidence of a crime." *Kohler v. Englade*, 470 F. 3d 1104, 1109 (5th Cir. 2006). Evidence obtained through an unreasonable search may be suppressed under the exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 139 (2009) ("Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial.").

Still, "suppression is not an automatic consequence of a Fourth Amendment violation." *Id.* at 137. "Instead, the question turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." *Id.* The "exclusionary rule is not an individual right" and only applies where it "results in appreciable deterrence." *Id.* at 141 (internal citations omitted). To suppress evidence on Fourth Amendment grounds, "[t]he party seeking suppression 'has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights.'" *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992)).

### III. Analysis

The Court held a suppression hearing on Defendant's motion to suppress and heard argument from both parties. Slightly unusual for a suppression hearing, however, is the position that both parties have taken regarding the actual "fruits" of the search. For example, there is no

specific piece of evidence that Defendant has moved to suppress. Moreover, the United States has argued that it recovered no usable evidence from the challenged searches. Nevertheless, Defendant asks the Court to suppress any evidence (without any specification) that may have been recovered regardless of whether the United States intends to use it.

Since no evidence was provided and there is no real factual dispute between the parties, the Court is presented with two questions: (1) did Det. Helms's affidavits contain false statements or material omissions; and (2) considering those potential errors, did the affidavits nevertheless establish probable cause? The Court finds that there were no proven false statements or material omissions. It also finds that, regardless of whether statements contained material omissions, probable cause existed.

A. *The* Franks *Issue*

Defendant was charged for, among other things, committing a hate crime under 18 U.S.C. 249(a)(2), which makes it a federal crime to "willfully cause bodily injury, or attempt to do so using a dangerous weapon, because of the victim's actual or perceived . . . religion, national origin, gender, **sexual orientation**, **gender identity**, or disability of any person . . . ."

Defendant first argues that the affidavits supporting the warrants were unconstitutional under *Franks v. Delaware. See* 438 U.S. 154, 155–56 (1978). The *Franks* inquiry requires courts consider: (1) "does the affidavit contain a false statement;" (2) "was the false statement made intentionally or with reckless disregard for the truth; and (3) "if the false statement is excised, does the remaining content in the affidavit fail to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017). This applies not only to material misrepresentations, but to material omissions as well. *United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020). Finally, under *Franks*, "[t]he proponent of a motion to suppress has the burden of proving, by a

preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Garcia*, 99 F.4th 253, 267 (5th Cir. 2024).

Defendant challenges Warrant #1 based on the inclusion of a reference to child pornography and the omission of a statement acknowledging that the hate-crime aspect of the crime was still under consideration. (Doc. No. 45 at 1–2). Regarding the alleged false statement, the Court finds that the challenged statement was irrelevant and inadvertently included—not a false statement made intentionally or with a reckless disregard for the truth. In Det. Helms's affidavit, he stated that:

> The statements in this affidavit are based upon the investigation I have conducted and based on my conversations with other law enforcement officers involved in this investigation, or who have engaged in numerous investigations involving child exploitation and/or child pornography.

(*Id.* at 3). Defendant argues that the reference to child pornography is a misrepresentation intended to persuade the magistrate judge that there was a federal crime where no probable cause existed to support the hate-crime charge. (Doc. No. 45 at 7). During the hearing, the United States conceded that this reference to child pornography and exploitation was unintended and included by an accidental scrivener's error.

Regarding prong one of the *Franks* inquiry, this statement is not necessarily false. There was no proof offered that Det. Helms did or did not speak with other investigators who may or may not have experience with investigating child exploitation cases. Nevertheless, in this case, the question of whether the statement is false or accidentally included is patently irrelevant. The erroneous inclusion of the reference to child exploitation and pornography, even if hypothetically false, does not satisfy the second and third prongs of the analysis.

As to prong two, there was no showing that Det. Helms's inclusion of the reference was done "intentionally" or with "reckless disregard for the truth." Further, there is no proof that it

played any role in the investigation, or the magistrate judge's decision to sign the warrant. Defendant had no evidence or argument to rebut the United States concession that the reference was included inadvertently. If the reference was made by accident, which Defendant did not contest, then *Franks* does not require suppression. Further, under prong three, the excision of the reference to child pornography does not negate the probable cause established by the affidavit. In fact, the passage complained of is totally irrelevant. The past experiences of the officers that Det. Helms spoke with is of no consequence in this context.

The affidavit contained numerous—and much more probative—pieces of evidence that support probable cause for multiple crimes including a federal hate crime. This evidence is much more direct, much more persuasive, and directly related to the case, while the alleged misstatement is totally irrelevant. For example, the affidavit describes at least two instances in which Defendant exchanged messages with one of the victims over Grindr and, once in the victim's home, brandished a firearm, physically assaulted, and robbed the victim among others. (*Id.* at 5). During the assaults and robberies, the victims allege that Defendant used numerous slurs for members of the gay and transgender communities and indicated a religious basis for his desire to kill them based on their transgender status. (*Id.*). The Court finds that these allegations are unaffected by removing any reference to child pornography or exploitation and are sufficient to establish probable cause for a violation of 18 U.S.C. § 249.

Defendant next argues that Det. Helms's affidavit was improper because it failed to disclose that the United States Attorney's Office was still "uncertain" about whether a federal hate crime was committed, despite language to the contrary. (Doc. No. 45 at 8).[1]

---

[1] Defendant's argument assumes that, because the Department of Justice had not yet certified the case for prosecution of a hate crime, it must be the case that either the prosecutors or Det. Helms did not know or believe that a hate crime had occurred. This assumption is entirely unsupported. Hypothetically,

8

When considering whether an omitted fact is material, "courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). "Unless the defendant makes a strong preliminary showing that the affiant excluded critical information from the affidavit with the intent to mislead the magistrate [judge]," however, "the Fourth Amendment provides no basis for a subsequent attack on the affidavit's integrity." *United States v. Tomblin*, 46 F.3d 1369, 1377 (5th Cir. 1995). If the facts omitted from an affidavit are "clearly critical" to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself. *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990).

Here, the Court finds that the alleged omission was not "clearly critical" to the affidavit and inserting the statement into the affidavit does not negate probable cause. Det. Helms's exact language includes, in pertinent part, the following:

> **This investigation concerns alleged violations of certain activities relating to a violation of the Matthew Sherpard [sic] and James Byrd Jr. Hate Crimes Prevention Act of 2009, which was codified in 18 U.S.C. § 249.** The act makes it a federal crime to willfully cause bodily injury, or attempt to do so using a dangerous weapon, because of the victim's actual or perceived race, color, religion, or national origin. The Act also extends federal hate crime prohibitions to crimes committed because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person, only where the crime affected interstate or foreign commerce or occurred within federal special maritime and territorial jurisdiction . . . .

(Doc. No. 47-1 at 3). In essence, Defendant argues that Det. Helms should have been clearer that the investigators are not yet sure that a hate crime occurred.[2]

Nevertheless, even if that uncertainty existed, it would not have undercut the probable cause established by the numerous and extensive factual allegations included. By its very language,

---

the investigation and prosecution teams could be absolutely convinced that a hate crime occurred, and the prosecution still might not be given the green light from Washington for any number of extrinsic reasons.

[2] *See supra*, n.1.

9

the affidavit states that the "investigation *concerns alleged* violations . . ." of a hate crime under the Shepard-Byrd Act. (Doc. No. 47-1 at 3) (emphasis added). It is clear that it was an ongoing investigation. At no point does Det. Helms aver that either he or United States Attorney's Office was certain that such a crime occurred. Ostensibly, the requested search warrant was intended to help resolve any potential uncertainty as to whether a federal hate crime would be charged. Thus, if the Court inserted the omitted "status of the investigation" statement, it would not preclude the court from finding probable cause. As such, Defendant has failed to show that the affiant officer obtained the warrant by recklessly including "material falsehoods in a warrant application." *Kendrick*, 980 F.3d at 442.

Defendant challenges Warrant #2 based on the same alleged material omission as Warrant #1. The alleged omission in Warrant #2 was the fact that it was "unclear if a federal hate crime existed at the time." (Doc. No. 45 at 7). As stated above, however, this "omission" is not material because it did not actually contradict anything in the affidavit. Det. Helms averred that the investigation was into "alleged violations" of the hate crime statute. (Doc. No. 47-1 at 3). Intuitively, this language implies that the violations were not yet a certainty. As such, if the Court inserted a statement to the effect of, "the United States Attorney's Office is not yet certain that federal hate crime charges will be brought," the added statement would not negate the otherwise-established facts supporting probable cause. The Court finds that this "omission" was not critical for probable cause and, thus, there is no *Franks* error requiring suppression of the evidence.

B. *Probable Cause*

Defendant claims that, regardless of the statements challenged above, the affidavits do not show "how the crime was committed in order to injure a victim based on their perceived status rather than a crime totally motivated by money or escape." (Doc. No. 45 at 11). Thus, the question

is whether the affidavits included sufficient facts to support probable cause for the bias-motivation of the crimes alleged.

"Probable cause exists when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought [by the warrant] constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109. In essence, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Even if constitutional issues arise, to suppress evidence on Fourth Amendment grounds, "[t]he party seeking suppression 'has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights.'" *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018).

The Court finds that there were sufficient facts included to show a fair probability that the items sought would constitute evidence and fruits of a bias-motivated crime. Det. Helms's affidavit includes witness statements that, while pistol-whipping and stomping on Victim #1, Defendant used numerous violent slurs including, among others:

(1) "You're a demon like all the others, all you trans people"

(2) "You're not a woman, you're a fa\*\*ot"

(3) "My religion considers you a demon"

(4) "You're not going to leave here alive"

(Doc. No. 47-1 at 5). During Defendant's alleged robbery of Victim #2, he was heard referring to Victim #2 as a "fa\*\*ot" as he dragged Victim #2 across a room by the hair. (*Id.* at 6–7). In addition,

Victim #2 stated that Defendant was "specifically soliciting 'trans' dates" via Grindr. (*Id.*). The consistent usage of slurs based on the perceived sexual orientation and identity of the victims, coupled with the particularly violent nature of the alleged crimes, is more than sufficient to support the likelihood of a motive based on gender-identity bias. Further, it follows that evidence of these bias-motivated crimes could be found in the vehicle used to flee the robberies and the phone used to contact victims prior to the alleged crimes. Supporting this conclusion is the fact that one of the victim's stolen phones had already been traced to the Defendant's car. Based on these allegations, the Court finds that the totality of the circumstances supports the conclusion that the warrants were supported by probable cause.

### IV.  CONCLUSION

The Court finds that the challenged affidavits provided sufficient probable cause to issue the warrants for the search of Defendant's apartment, phone, and vehicle. As such, the Motion to Suppress is **DENIED**. (Doc. No. 45).

Signed this __5__ day of June, 2025.

Andrew S. Hanen
United States District Judge